**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on January 28, 2009, which may be different from its entry on the record.**

**IT IS SO ORDERED.**



**Dated: January 28, 2009**

**Arthur I. Harris
United States Bankruptcy Judge**

___

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 08-10830 |
| | ) | |
| DERRICK BRAY, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Judge Arthur I. Harris |

MEMORANDUM OF OPINION[1]

Before the Court is the application of debtor's former counsel, Kenneth J. Freeman Co., L.P.A., for allowance of final compensation for services rendered as counsel to the debtor-in-possession for the period of December 12, 2007, through August 22, 2008, and for allowance of compensation as a Chapter 11 administrative expense claim, as well as objections by the debtor and the United States Trustee. For the reasons that follow, the Court approves total compensation in the amount of $6,895.39, which includes $6,789.00 in fees for work on or after

___

[1] This opinion is not intended for official publication.

March 10, 2008, and $106.39 in costs and expenses. Attorney Freeman shall return $604.61 of his $7,500.00 retainer to the debtor-in-possession on or before February 20, 2009.

## JURISDICTION

This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a) and Local General Order No. 84, entered on July 16, 1984, by the United States District Court for the Northern District of Ohio.

## FACTS AND PROCEDURAL HISTORY

On August 16, 2007, Derrick Bray, the debtor-in-possession in the current Chapter 11 case, filed his first bankruptcy petition under Chapter 13, Case No. 07-16190. During that case, Bray was represented by a different law firm. On October 22, 2007, the Court dismissed Bray's first Chapter 13 case for failure to timely file schedules, statements, and a Chapter 13 plan.

On December 12, 2007, Bray met with Freeman to discuss filing a new Chapter 13 case. On that day, Freeman received $1,000 toward an initial retainer of $2,354.00, which was based on a retainer of $2,000 for the Chapter 13 case, $274 for the filing fee, $30 for a credit report, and $50 for the financial management course. The initial plan was for Freeman to file a new Chapter 13

case on Bray's behalf. At this meeting, Freeman did not provide Bray with a written agreement communicating the nature and scope of the representation and the basis or rate of the fee and expenses for which Bray would be responsible. Nor did Freeman provide such a written agreement during the period leading up to the filing of the current case.

From December, 2007, through early February, 2008, Freeman and Bray and Bray's ex-wife, Anita Carter, had meetings and exchanged correspondence about a new bankruptcy filing. Bray was unhappy about the pace of Freeman's work and had difficulties in communication with Freeman and his office. Faced with collection efforts by creditors, Bray filed a *pro se* Chapter 13 petition on February 8, 2008. Bray and Carter then proceeded to Freeman's office with the intent of firing him. Instead, Freeman convinced Bray that Freeman should be retained to take over the just-filed case and move to convert the case to a proceeding under Chapter 11. Freeman advised Bray that conversion to Chapter 11 was necessary because the size of Bray's debts made Bray ineligible for relief under Chapter 13.

On February 8, 2008, Bray paid Freeman an additional $7,265. This sum, together with the $1,000 paid on December 12, 2007, represented Freeman's Chapter 11 retainer of $7,500, plus $765 for the filing fee for a motion to convert

3

the case from Chapter 13 to Chapter 11.

On February 11, 2008, Freeman filed a notice of appearance, and on February 12, 2008, Freeman filed a number of the debtor's statements and schedules. On February 25, 2008, Freeman filed the motion to convert the case to Chapter 11, which was granted on March 13, 2008. Freeman did not file the fee disclosure statement until March 10, 2008 – 28 days after entering his notice of appearance.

On March 18, 2008, Freeman filed an application, signed by Bray, to employ his law firm as counsel for the debtor-in-possession [Docket #41]. Subject to the approval of the Court, Bray agreed to pay counsel at their standard hourly rates of $275 for attorney Freeman and $200 for attorney Kuzmickas. The application noted that counsel had received a retainer of $7,500. On April 4, 2008, the Court entered an order approving the application to employ counsel.

On July 18, 2008, the United States Trustee filed a motion to dismiss or convert the case based on unfiled operating reports for March, April, and May of 2008. The motion also indicated that the operating report for June would be due on July 20, 2008. The notice accompanying the motion indicated that a written response to the motion would be due "on or before seven (7) days from the hearing

4

scheduled on this motion, or by August 5, 2008," and that a hearing was scheduled for August 12, 2008. The final sentence of the notice provided:

> If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Motion and may enter an order granting that relief without conducting a hearing.

Pursuant to a July 21, 2008, memo, the undersigned judge cancelled the August 12, 2008, dockets and adjourned all hearings to August 26, 2008; however, because no response was filed by August 5, 2008, the Court noted the motion to convert or dismiss as "NO RESPONSE; GRANTED" and on August 13, 2008, entered an order dismissing the case.

On August 21, 2008, the Court received a copy of a letter dated August 19, 2008, from Bray to Freeman dismissing Freeman as counsel. On August 21, 2008, Bray also filed a motion to reconsider the order of dismissal. In addition, on August 21, 2008, Bray filed a motion seeking return of the $7,500 retainer. On September 15, 2008, the Court granted Bray's motion to vacate the order of dismissal, thereby reinstating Bray's Chapter 11 case.

On October 7, 2008, Freeman filed a detailed fee application. Freeman requested an attorney's fee of $15,802.50, plus expenses in the amount of $106.39. Freeman's application also sought authorization to apply the retainer of $7,500 toward the allowed final compensation, plus payment of the balance due as an

5

allowed Chapter 11 administrative expense claim.  The Court heard oral argument on the application as well as objections by Bray and the United States Trustee on November 4, 2008, and November 18, 2008.  The Court also conducted a brief evidentiary hearing on December 17, 2008, with Bray, Freeman, and Carter all testifying,[2] after which the Court took the matter under advisement.

DISCUSSION

The final fee application submitted by Kenneth J. Freeman, Co., L.P.A. seeks compensation pursuant to 11 U.S.C. § 330, which provides that, after notice and hearing, a court may award "reasonable compensation for actual, necessary services" rendered by professionals and "reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1)(A) and (B).  Section 330 further provides that, in determining the amount of reasonable compensation to be awarded to a professional person, "the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors . . ." 11 U.S.C.

---

[2] The findings of fact contained in this memorandum reflect the Court's weighing of the evidence and the credibility of witnesses.  "In so doing, the Court considered the witnesses' demeanor, the substance of the testimony, and the context in which the statements were made, recognizing that a transcript does not convey tone, attitude, body language, or nuance of expression." *In re Parrish*, 326 B.R. 708, 711 (Bankr. N.D. Ohio 2005).  Even if not specifically mentioned in this decision, the Court has considered the testimony of all the witnesses at the evidentiary hearing, as well as all exhibits admitted into evidence and all stipulations.

6

§ 330(a)(3). In calculating the reasonable fees to be awarded under 11 U.S.C. § 330, this Court uses the lodestar method. *See In re Boddy*, 950 F.2d 334, 337 (6th Cir. 1991) (adopting lodestar method of fee calculation for bankruptcy cases). The lodestar amount "is calculated by 'multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended.' " *Id.*, *quoting Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874 (11th Cir. 1990) ("The Supreme Court has made it clear that the lodestar method of fee calculation is the method by which federal courts should determine reasonable attorney's fees under federal statutes which provide for such fees.").

In this case, Bray raises several objections to his former counsel's fee application. While Bray generally does not take issue with the hours billed or with the hourly rates agreed to in the March 18, 2008, application to employ counsel, Bray takes serious issue with the assertion that the time counsel spent was beneficial to his case. Bray also complains that his attorney's poor communication and lack of attention forced him to file a *pro se* Chapter 13 case and caused the same case to be dismissed after it was converted to Chapter 11 for failure to timely file operating reports.[3]

---

[3] Some of the confusion related to the dismissal of the case was created by the Court. There was a misunderstanding about the August 12, 2008, hearing due in part to the Court's changing the date. For this reason, it is likely that the case

7

### A. Attorney Fees for Freeman's Work for Bray between December 12, 2007, and March 10, 2008

The Court finds that much of the confusion regarding the respective responsibilities of attorney and client stems from counsel's failure to spell out his responsibilities in writing at the time of engagement.

Rule 1.5 of the Ohio Rules of Professional Conduct, made applicable to this proceeding by virtue of N.D. Ohio Local Bankruptcy Rule 2090-2(a) and N.D. Ohio Local Civil Rule 83.7, provides in pertinent part:

> (b) The nature and scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in *writing*, before or within a *reasonable* time after commencing the representation unless the lawyer will charge a client whom the lawyer has regularly represented on the same basis as previously charged. (emphasis in original).

The Official Comment to Rule 1.5 provides in pertinent part:

> [2] The detail and specificity of the communication required by division (b) will depend on the nature of the client-lawyer relationship, the work to be performed, and the basis of the rate or fee. A writing that confirms the nature and scope of the client-lawyer relationship and the fees to be charged is the preferred means of communicating this information to the client and can clarify the relationship and reduce the possibility of a misunderstanding.

---

would have been reinstated if either Bray or Freeman had argued "excusable neglect" and filed the delinquent reports. In any event, Bray filed a Motion to Reconsider Dismissal on August 21, 2008. A hearing was held on September 9, 2008, at which the U.S. Trustee stated that the debtor-in-possession's filings were current and that Bray had turned over the necessary documents. The dismissal was vacated on September 15, 2008.

8

> . . . Unless the situation involves a regularly represented client, the lawyer should furnish the client with at least a simple memorandum or copy of the lawyer's customary fee arrangements that states the general nature of the legal services to be provided, the basis, rate, or total amount of the fee, and whether and to what extent the client will be responsible for any costs, expenses, or disbursements in the course of the representation.
>
> . . .
>
> Rule 1.5(b) expands on EC 2-18 by mandating that the nature and scope of the representation and the arrangements for fees and expenses shall promptly be communicated to the client, preferably in writing, to avoid potential disputes, unless the situation involves a regularly represented client who will be represented on the same basis as in the other matters for which the lawyer is regularly engaged.

By no later than December 12, 2007, Freeman and Bray discussed the filing of a Chapter 13 case, agreed to a $2,000 retainer, and Freeman took an initial payment of $1,000. However, Freeman provided no written agreement other than the March 18, 2008, application to employ Freeman as counsel for the debtor-in-possession. While Rule 1.5 arguably does not mandate a written agreement in every situation, to the extent that the lack of a written agreement creates confusion over responsibilities and fee disputes, the Court will hold counsel responsible for those gray areas.

In addition, to the extent that billings were for what was anticipated to be a Chapter 13 case and to the extent that Freeman performed services while it was a Chapter 13 case, such billings are arguably governed by Administrative Order

9

07-2, which requires a written fee agreement. Under Paragraph 2 of Administrative Order 07-2, absent the filing of the form entitled "Rights and Responsibilities of Chapter 13 Debtors and their Attorneys," counsel fees shall be allowed:

> only pursuant to a written agreement between the debtor and the debtor's attorney that clearly delineates the nature and scope of the representation and the basis or rate of the fees and expenses. See Rules 1.2 and 1.5 of the Ohio Rules of Professional Conduct, made applicable by N.D. Ohio Local Civil Rule 83.5.

Further, section 329 of the Bankruptcy Code provides in pertinent part:

> (a) Any attorney representing a debtor in a case under this title . . . shall file with the court a statement of the compensation paid or agreed to be paid . . . for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.
>
> (b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment to the extent excessive, to – (1) the estate . . . or (2) the entity that made such payment.

Section 329 is implemented by Fed. R. Bankr. P. 2016 and 2017. Rule 2016(b) provides that "[e]very attorney for a debtor . . . shall file and transmit to the United States trustee within 15 days after the order for relief . . . the statement required by § 329 of the Code . . . ." Under Rule 2017 the bankruptcy court may determine, after notice and a hearing, that any portion of an attorney's

10

fee for work in a bankruptcy case is excessive. "An attorney in a bankruptcy case has an affirmative duty to disclose fully and completely all fee arrangements and payments." *See e.g., Henderson v. Kisseberth (In re Kisseberth)*, 273 F.3d 714, 720 (6th Cir. 2001) (*citing In re Plaza Hotel Corp.,* 111 B.R. 882, 883 (Bankr. E.D. Cal. 1990).

In this case, there is no written agreement or sufficient oral understanding between lawyer and client for services to be performed prior to the filing of an application to employ Freeman as counsel on March 18, 2008. There is also the lack of a timely disclosure of compensation contrary to the 15-day requirement of Rule 2016, as payment was not disclosed until March 10, 2008.

Courts have routinely held that a bankruptcy court's discretion in awarding fees is broad, extending to authority to deny fees in their entirety or to disgorge prepetition retainers for failures to observe the strictures of the statute. *See e.g., In re Downs*, 103 F.3d 472, 479 (6th Cir. 1996) ("The bankruptcy court should deny all compensation to an attorney who exhibits a willful disregard of his fiduciary obligations to fully disclose the nature and circumstances of his fee arrangement under § 329 and Rule 2016. The authority to do so is inherent, and in the face of such infractions should be wielded forcefully."). Typically, however, cases warranting denial of all fees have involved either improper conflicts of

interest or failure to disclose compensation arrangements as required by Bankr. Rule 2014 (a) and 11 U.S.C. § 329.  *See e.g. In re Smith*, 256 B.R. 730, 735 (W.D. Mich. 2000).

In the present case, the absence of a written agreement delineating the nature and scope of representation contributed to a breakdown in communication which led to Bray filing a *pro se* Chapter 13 case on February 8, 2008.  In addition, Freeman did not timely comply with the fee disclosure requirements of Rule 2016. Nor did Freeman comply with Administrative Order 07-2, even though Freeman initially contemplated a Chapter 13 filing.  While the Court might otherwise excuse a delay in filing a fee disclosure statement when counsel enters an appearance in a pending case and anticipates a prompt conversion to Chapter 11, in the present case, the attorney-client relationship existed for several months before the notice of appearance.  Moreover, it was the lack of a written agreement or sufficient oral understanding between lawyer and client which led to the *pro se* filing and the need for counsel to enter an appearance in a pending case. Accordingly,  the Court disallows all fees billed from the December 12, 2007, meeting with Bray, until the filing of the disclosure of compensation on March 10, 2008, amounting to $9,013.50.

*B. Freeman's Work for Bray On or After March 10, 2008*

The Bankruptcy Code also provides that the bankruptcy court may award to a debtor's attorney "reasonable compensation for actual, necessary services rendered." 11 U.S.C. § 330(a)(1). In order for the services of a debtor's attorney to be "necessary," they must benefit the debtor's estate. *In re Robinson*, No. 05-1066, 2006 U.S. App. LEXIS 16336, at *374 (6th Cir. June 22, 2006) (*citing In re Gibbs-Inman Co.,* 114 F.3d 1187 (6th Cir. 1997) (unpublished table decision).

Bray does not argue that Freeman's work after March 10, 2008, was not *necessary* for the success of his case. Rather, Bray asserts that the untimely and incomplete nature of Freeman's work resulted in little or no benefit to his case. However, Freeman did file, on Bray's behalf, a motion to convert the case to Chapter 11, motions for the use of cash collateral, motions to establish a claims bar date, and other motions which benefitted the debtor's Chapter 11 case. He reviewed proofs of claim and appeared at the meeting of creditors. In addition, Freeman assisted Bray in submitting completed monthly operating reports to the U.S. Trustee's office, but did not bill for those services.

Freeman did work that benefitted the estate, attested to, in part, by the fact that the case is on-going, and Freeman is entitled to compensation for that work.

13

The fee Freeman charged for preparing the fee application and the objection by the U. S. Trustee were resolved by agreement following the November 18, 2008 hearing. [*See* Docket #113].[4]

Freeman's fee application requests fees in the amount of $15,802.50. The disallowed fees amount to $8,057.50, for work prior to March 10, 2008, plus a $956.00 reduction for fee preparation. The Court approves a fee in the amount of $6,789.00, plus $106.39 in costs, for a total of $6,895.39.

## CONCLUSION

For the reasons stated above, the Court concludes that Kenneth J. Freeman Co., L.P.A., satisfied its burden of establishing its partial entitlement to the above-mentioned fees. Therefore, the Court approves the application in the amount of $6,789.00, and costs and expenses of $106.39, for a total of $6,895.39. Attorney Freeman shall return $604.61 from his $7,500.00 retainer to the debtor-in-possession by February 20, 2009.

IT IS SO ORDERED.

---

[4] In his Objection, the U.S. Trustee stated that the fee of $1,430 for fee application preparation represented 9% of all the fees requested. The allowable rate in the Sixth Circuit, pursuant to *Coulter v. Tennessee,* 805 F.2d 146, 151 (6th Cir. 1986), is 3%. *Accord Gonter v. Hunt Valve Co.,* 510 F.3d 610 (6th Cir. 2007). At the November 18th hearing Freeman agreed to reduce his billings for fee preparation work by $956.00, resolving the U.S. Trustee's objection.